DECISION AND JUDGMENT ENTRY
{¶ 1} Richard Fillmore, Terry Jacobs, Steven Musser, Ralph Whitaker, and Richard Knauss, Sr. appeal the decision of the Ottawa Court of Common Pleas to dismiss their complaint. Because we conclude that appellants' complaint is preempted by federal law, we affirm.
 {¶ 2} Appellants were employed by appellee. They, among others, sued appellee as a result of contracting Chronic Beryllium Disease ("CBD") from exposure to beryllium and beryllium-containing materials at appellee's facilities.[1] In June 1998, appellee entered into a series of settlement agreements with these litigants which were contingent upon all parties signing releases in the different lawsuits. Appellants received various cash payments from their settlement agreements. The settlement agreements also modified appellee's Chronic Beryllium Disease Policy, effective April 1, 1993, and restated May 1, 1997 (the "CBD policy") in certain respects. The CBD policy would remain in place for appellants, even if it were amended or terminated with respect to other Brush employees. In addition, the CBD policy's buy-out option would be extended from five years to ten years from the date of their releases.
 {¶ 3} Appellants remained employed with appellee until January 2002 when they were forced by appellee to exercise the one-year buy-out option before the ten years had run. On August 27, 2003, appellants filed a complaint with the Ottawa County Court of Common Pleas alleging breach of contract, breach of fiduciary duty, and punitive damages. Appellee removed the action to federal court and filed a motion to dismiss the complaint because appellants' state law claims were preempted by the Employee
 {¶ 4} Retirement Income Security Act ("ERISA"), Section 1001 et seq., Title 29 U.S.Code. The federal court, sua sponte, remanded the action to the Ottawa County Court of Common Pleas for lack of subject matter jurisdiction. Appellee renewed its motion to dismiss and alternatively filed a motion for summary judgment. The trial court, determining that appellants' claims were preempted by ERISA, granted appellee's motion to dismiss. Appellants raise the following assignment of error on appeal:
 {¶ 5} "The court below erroneously decided that plaintiffs' complaint in its entirety was preempted by federal law as relating to an ERISA plan and thus wrongfully dismissed plaintiffs' complaint."
 {¶ 6} Initially we note that appellee filed an alternative motion to dismiss or for summary judgment. The trial court granted appellee's motion pursuant to Civ.R. 12(B)(6). Our review, therefore, is limited to whether the trial court properly dismissed appellants' complaint for failure to state a claim.
 {¶ 7} The standard of review on a Civ.R. 12(B)(6) motion to dismiss is de novo. Hunt v. Marksman Prod., Division of S/R Industries, Inc.
(1995), 101 Ohio App.3d 760, 762. A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. State ex rel. Hanson v. Guernsey Cty.Bd. of Commrs. (1992), 65 Ohio St.3d 545, 548. Dismissal is appropriate if, after all factual allegations of the complaint are presumed true and all reasonable inferences are made in favor of the nonmoving party, it appears beyond doubt that the nonmoving party can prove no set of facts entitling him to the requested relief. O'Brien v. University CommunityTenants Union, Inc. (1975), 42 Ohio St.2d 242, syllabus.
 {¶ 8} The court will look only to the complaint or, in a proper case, the copy of a written instrument upon which a claim is predicated to determine whether the allegations are legally sufficient to state a claim. Slife v. Kundtz Properties (1974), 40 Ohio App.2d 179, 185-186. A Civ.R. 12(B)(6) motion may be granted upon a written instrument attached to the complaint if it presents an insuperable bar to relief. Id. at 186. If there is a set of facts, consistent with the plaintiffs' complaint, which would allow the plaintiffs to recover, the court may not grant a defendant's motion to dismiss. York v. Ohio State Highway Patrol
(1991), 60 Ohio St.3d 143, 144.
 {¶ 9} Throughout appellants' brief, various affidavits and depositions are cited. The trial court did not convert the motion to dismiss to a motion for summary judgment. Our review, therefore, is limited to only the complaint and to the documents attached to the complaint or incorporated therein — i.e., settlement agreements and the CBD Policy.[2]
 The Parties' Positions {¶ 10} In this action, appellants plead three different claims within their complaint — breach of contract, breach of fiduciary duty, and punitive damages. All of their claims are contingent upon a belief that appellee breached their settlement agreements. Appellants argue that their settlement agreements guaranteed them ten years of employment and that appellee breached the settlement when it forced them to take the one-year buy-out option. In their complaint, appellants allege that verbal and written assurances were given to them that while they were able to work, they would be "afforded the opportunity to work internal to the company at a local facility with minimal or no exposure to beryllium or external to the company as a leased or contractor employee." Appellants further contend that the right to continued employment is separate from any benefit contained in the CBD policy, and thereby not an ERISA benefit. Appellee maintains that because the settlement agreement incorporates the CBD policy and would have no application or force without it, appellants' claims arise from the CBD policy. Appellee then argues that because the CBD policy is an ERISA plan, appellants' claim is preempted under Section 1144(a), Title 29 U.S.Code.
 {¶ 11} In order to resolve this matter, we must answer two questions. First, is the CBD policy an ERISA plan? Second, if it is an ERISA plan, do appellants' claims relate to the CBD policy?
 CBD Policy is an ERISA Plan {¶ 12} Under Section 1144(a), Title 29 U.S. Code, ERISA preempts state law and state law claims that "relate to" any employee benefit plan as that term is defined therein. Pilot Life Ins. Co. v. Dedeaux (1987),481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39. Under ERISA, an "employee benefit plan" is defined as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare plan and an employee pension benefit plan." Section 1002(3), Title 29 U.S.Code. The term
"employee welfare benefit plan" means "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer * * * for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title * * *." Section 1002(1), Title 29 U.S.Code. "The hallmark of an ERISA benefit plan is that it requires `an ongoing administrative program to meet the employer's obligation.'"Swinney v. General Motors Corp. (C.A. 6, 1995), 46 F.3d 512, 517, citingFort Halifax Packing Co. v. Coyne (1987), 482 U.S. 1, 11-12, 107 S.Ct. 2211,96 L.Ed.2d 1.
 {¶ 13} Because an ERISA plan requires an ongoing administrative program, the Sixth Circuit has stated "simple or mechanical determinations do not necessarily require the establishment of * * * an administrative scheme; rather, an employer's need to create an administrative system may arise where the employer, to determine the employees' eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria." Sherrod v. General Motors Corp.
(C.A. 6, 1994), 33 F.3d 636, 638 quoting Kulinski v. MedtronicBio-Medicus Inc. (C.A. 8, 1994), 21 F.3d 254, 257. The need for an administrative scheme may also arise when the employer assumes responsibility to pay benefits on a regular basis, and "thus faces periodic demands on its assets that create a need for financial coordination and control." Fort Halifax Packing, 482 U.S. at 12.
 {¶ 14} In characterizing the CBD policy as an ERISA plan, the trial court determined that the CBD policy contained an ongoing administrative scheme. Appellants challenge this characterization, asserting that the relief they are seeking — wages for work to be performed — are not ERISA "benefits" which require a uniform administrative scheme. They further contend that a claim for wrongful termination generally does not fall under ERISA preemption.
 {¶ 15} The problem with appellants' argument is that they focus on the specific relief that they seek. The question, however, is whether the CBD policy as a whole is an ERISA plan, and not whether a specific benefit of the plan is an ERISA benefit. See Fort Halifax Packing,482 U.S. at 11-12.
 {¶ 16} After reviewing the CBD policy, we conclude that it is an ERISA plan. The purpose of the policy is to provide benefits to current employees and former employees who are diagnosed with chronic beryllium disease or become sensitized to beryllium as a result of their employment with appellee. The policy creates different categories of participants and delineates a number of available benefits. The various benefits include placement in a facility with no or minimal exposure; a severance package of base pay for one year, benefits for one year, and outplacement assistance; income supplement for up to five years for those unable to work and periodic review of the income supplement; participation in a medical surveillance program for those who test positive for blood lymphocyte proliferation testing; vocational rehabilitation/training; and personal/family counseling. A participant may move from one category to another depending upon the initial diagnosis and the progression of his disease. All of this necessitates an ongoing administrative scheme.[3]
 Appellants' Claims Relate to the CBD Policy {¶ 17} Having determined that the CBD policy is an ERISA plan, we must now determine whether appellants' claims relate to the CBD policy. The phrase "relate to" in Section 1144(a). Title 29 U.S. Code is given broad meaning so that a state law cause of action is preempted if "it has connection with or reference to that plan." Metropolitan Life Ins. Co.v. Mass. (1985), 471 U.S. 724, 730, 105 S.Ct. 2380, 85 L.Ed.2d 728. Such claims are preempted if they "relate to" an ERISA plan whether or not they were so designed or intended. Daniel v. Eaton Corp. (C.A. 6, 1988)839 F.2d 263. It is not the label placed on a state law claim that determines whether it is preempted, but whether, in essence, such a claim is for the recovery of an ERISA plan benefit. Scott v. Gulf Oil Corp.
(C.A. 6, 1985), 754 F.2d 1499, 1504. Nor is it relevant to an analysis of the scope of federal preemption that appellants may be left without remedy. Caterpillar Inc. v. Williams (1987), 482 U.S. 386, 107 S.Ct. 2425,96 L.Ed.2d 318.
 {¶ 18} In Halley v. Ohio Co. (1995), 107 Ohio App.3d 518, the Eighth Appellate District noted "While there is no simple test for determining whether a state law `relates to' a plan, the courts have established some guiding principles. There are four situations in which ERISA will generally pre-empt state law: (1) when laws are specifically designed to affect employee benefits; (2) when state law and common-law claims are for the recovery of an ERISA plan; (3) when ERISA provides a specific remedy; (4) when state laws and common-law claims provide remedies for misconduct growing out of ERISA plan administration. It is not relevant whether the plaintiffs will be left without a remedy." Id. at 522. (Citations omitted.)
 {¶ 19} Appellants contend that their right to continued employment arises from paragraph 8 of their settlement agreements and does not relate to the CBD policy. They also argue that in his decision denying federal subject matter jurisdiction, Judge Katz found that their claim for continued employment originates in their settlement agreements. Finally, appellants maintain that certain claims, which only peripherally relate to an ERISA plan, do not require preemption.
 {¶ 20} Appellee also relies on paragraph 8 as the basis for its contention that appellants' claims relate to the CBD policy and are, therefore, preempted. Paragraph 8 of the settlement agreements provides:
 {¶ 21} "8. As further consideration for the promises made by Releasors herein, if Brush's Chronic Beryllium Disease Policy, effective April 1, 1993, and restated May 1, 1997 (the "CBD Policy"), is applicable as of the date of this Agreement to the Plaintiff-Employee, Brush agrees that notwithstanding the provision in the CBD Policy that Brush reserves to itself the right to amend or terminate the policy at any time, the CBD Policy shall remain in place as to Plaintiff-Employee (and the CBD Policy is hereby amended to so provide), even if the policy is amended or terminated as to other Brush employees.
 {¶ 22} Notwithstanding the five-year time limit imposed under Section III.A. of the CBD Policy, those Plaintiff-Employees who have not already exercised the option to leave Brush with one year of benefits, as described in Section III.A.3. of the CBD Policy shall have ten years from the date of this release to exercise the option to leave Brush with one year of benefits, as described in Section III.A.3. of the CBD Policy (and the CBD Policy is hereby amended to so provide)."
 {¶ 23} We agree with the trial court that the benefits appellants are seeking actually arise from the CBD policy, rather than the settlement agreement. Paragraph 8 serves two purposes. First, it provides that appellee cannot amend or terminate the CBD policy as it pertains to appellants. Second, paragraph 8 extends from five years to ten years appellants' ability to exercise the option to leave appellee with one year of benefits. Whether appellee could eliminate appellants' option to "work internal to the company at a local facility with no or minimal exposure to airborne beryllium" or "external to the company * * * as a leased or contract employee" or whether it was required to offer this alternative depends upon the terms of the CBD policy itself. Also, the settlement agreement, by amending the CBD policy, did not grant a new right to appellants but simply extended from five to ten years the ability to exercise the buy-out option. Thus, if there is any "guarantee of employment" as appellants claim, it originates in the CBD policy rather than the settlement agreement.
 {¶ 24} In addition, Judge Katz's decision concerned whether appellants' complaint involved a case of complete preemption in order to establish federal subject matter jurisdiction. Complete preemption is an exception to the well-pleaded complaint rule and essentially permits a district court to convert a state common law complaint into one involving a federal claim. Caterpillar, 482 U.S. at 393. Judge Katz determined that appellants claims were "not properly characterized as § 1132 claims" for civil enforcement and, therefore, that complete preemption did not exist. He then stated "Lacking subject matter jurisdiction, this Court has no occasion to determine whether the Defendant's CBD Policy is indeed an ERISA plan, and if so, whether Plaintiffs' claims are subject to § 1144 preemption." We also are not persuaded that appellants' claims only peripherally relate to the CBD policy. Because their claims arise from and "relate to" the CBD policy, appellants' complaint is preempted by ERISA.
 Conclusion {¶ 25} In summary, we find appellants' sole assignment of error is not well-taken. The judgment of the Ottawa County Court of Common Pleas is affirmed. Appellants are ordered to pay courts of this appeal.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Knepper, J., Lanzinger, J. concur.
[1] The different lawsuits filed in Cuyahoga County Common Pleas Court included: Ralph Whitaker, et al., v. Brush Wellman, Inc., Case No. 314064; Steven Musser, et al. v. Brush Wellman, Inc., Case No. 317661;Lester Starin v. Brush Wellman, Inc., Case No. 321428; Terry Jacobs, etal. v. Brush Wellman, Inc., Case No. 321429, Mia Johnson, et al. v. BrushWellman, Inc., Case No. 326113; Larry Knepper, et al. v. Brush Wellman,Inc., Case No. 323146; and Herbert Berlin v. Brush Wellman, Inc., Case No. 329233.
[2] While appellants actually attached a copy of appellee's Chronic Beryllium Disease Policy, effective April 1, 1993, instead of the version of the policy restated May 1, 1997, the correct policy was submitted to the trial court with appellee's motion to dismiss. The trial court could properly rely on the 1997 policy because it had been incorporated into both the complaint and into the settlement agreement. See ConnollyConstr. Co. v. The City of Circleville (Mar. 16, 1988), 3rd Dist. No. 9-87-10; Weiner v. Klais Co. (C.A. 6, 1997), 108 F.3d 86, 89.
[3] We also note that subsequent to the trial court's determination, in a separate federal lawsuit Judge James Carr determined in Fillmore v.Brush Wellman (Mar. 8, 2004), N.D. Ohio No. 3:03CV7477, unreported that appellee's CBD policy is an ERISA plan.