OPINION
{¶ 1} Plaintiffs-appellants Richard and Marilyn Irvin [hereinafter appellants] appeal from the October 7, 2004, Judgment Entry of the Muskingum County Court of Common Pleas which granted defendants-appellees', American General Finance, et al. [hereinafter appellees], motion to dismiss.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On August 1, 2003, appellants filed a complaint in the Muskingum County Court of Common Pleas, claiming fraud, breach of fiduciary duty, negligence and violations of the Ohio Corrupt Practices Act, R.C. 2923.31
et seq. The defendants-appellees were American General Finance, Inc. [hereinafter American General], Merit Life Insurance Co. [hereinafter Merit Life], and, as named individuals, Ms. Lay, Ms. Updegrave, and Mr. Fox. The named individuals were life insurance agents and loan officer employees for Merit Life and American General.
 {¶ 3} Appellants' complaint was based upon the following factual allegations. Appellants are husband and wife. Neither graduated from high school. Both have very limited reading skills and are unsophisticated as to financial affairs and money management. Appellant Richard Irvin is employed by the Longaberger Company as a custodian and appellant Marilyn Irvin is totally disabled and receives Social Security Disability. Because of their limited income, appellants had obtained numerous small consumer loans over the years.
 {¶ 4} From at least October 16, 1995, through August 4, 1999, appellants had a continuing relationship with American General. During that time, appellants had nine loans with American General.[1]
According to appellants, during the years of the American General relationship, appellants, at the insistence of appellees, were induced to purchase numerous insurance policies from American General, as well as single premium term life insurance policies from Merit Life, a subsidiary of American General.
 {¶ 5} In essence, appellants allege in the complaint that they would not have purchased these illegal, expensive, duplicative and unnecessary policies had the defendants truthfully and adequately disclosed that these coverages were illegal and optional, in excess of what appellants could afford, unnecessary and that the defendants, by selling the single premium life insurance policies and/or personal property insurance policies, were violating the Ohio Corrupt Practices Act.
 {¶ 6} On October 31, 2003, all appellees moved to dismiss the complaint, without answering, pursuant to Civ. R. 12(B) (6) (failure to state a claim upon which relief can be granted) and (9) (b) (failure to plead fraud with specificity). On December 8, 2003, appellants filed a first amended complaint. The first amended complaint added class action allegations pursuant to Civ. R. 23(B) (2) and 23(B) (3) and an additional claim under Ohio's Mortgage Loan Act, R.C. 1321.51 et seq. (formerly known as the Second Mortgage Security Loan Act).
 {¶ 7} Subsequently, appellees filed a motion to dismiss appellants' first amended complaint, pursuant to Civ. R. 12(B) (6) and (9) (b). On September 10, 2004, the trial court granted appellees' motion to dismiss the first amended complaint. The trial court's decision was based upon its conclusion that appellants' complaint "centers around the central issue of their allegation they were forced to buy credit life on their loans without being told they had the option of not buying the insurance. As pointed out many times in the [appellees'] motion to dismiss, the loan documents clearly, and in writing, pointed out to the [appellants'] that credit life was optional and they had the right to refuse its purchase." September 10, 2004, Decision. The decision was journalized by an Entry filed October 7, 2004.
 {¶ 8} It is from the October 7, 2004, Journal Entry that appellants appeal, raising the following assignments of error:
 {¶ 9} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FOUND BEYOND DOUBT THAT THE IRVINS COULD PROVE NO SET OF FACTS UNDER WHICH A REASONABLE JUROR COULD FIND IN THEIR FAVOR CONCERNING DEFENDANTS-APPELLEES' AFFIRMATIVE FRAUD.
 {¶ 10} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING DEFENDANTS-APPELLEES' RULE 12(B)(6) MOTION TO DISMISS THE IRVINS COMMON LAW NEGLIGENCE AND BREACH OF FIDUCIARY DUTY CLAIMS, AND THEIR STATUTORY OHIO MORTGAGE ACT AND OHIO CORRUPT PRACTICES ACT CLAIMS, SINCE THE LOWER'S [SIC] COURT BELIEF THAT DEFENDANTS HAD "CLEARLY, AND IN WRITING" DISCLOSED AN OPTION NOT TO PURCHASE CREDIT INSURANCE DOES NOT MAKE IT BEYOND DOUBT THAT THE IRVINS CAN PROVE FACTS UNDER WHICH A REASONABLE JUROR COULD FIND IN THEIR FAVOR AS TO THE TERM LIFE AND EXCESS PROPERTY CASUALTY COVERAGES AT ISSUE THEREUNDER."
 {¶ 11} This matter reaches this court upon the granting of a motion to dismiss, pursuant to Civ. R. 12(B) (6), failure to state a claim upon which relief can be granted.[2] We review a grant of a Civ.R. 12(B) (6) motion to dismiss de novo. Greely v. Miami Valley Maintenance Contrs.Inc. (1990), 49 Ohio St.3d 228, 551 N.E.2d 981. A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. State ex rel. Hanson v.Guernsey Cty. Bd. of Commrs., 65 Ohio St.3d 545, 605 N.E.2d 378,1992-Ohio-73. Under a de novo analysis, we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party. Byrd. v. Faber (1991),57 Ohio St.3d 56, 565 N.E.2d 584. In order for the trial court to dismiss a complaint pursuant to Civ.R. 12(B) (6), the court must find beyond a doubt that the plaintiff can prove no set of facts that would support his claim for relief. O'Brien v. Univ. Community Tenants Union (1975),42 Ohio St.2d 242, 327 N.E.2d 753.
 {¶ 12} We now turn to appellants' assignments of error.
 I {¶ 13} In the first assignment of error, appellants contend that the trial court erred when it found that appellants could prove no set of facts that would support any claim for relief concerning the claim of affirmative fraud.[3] We disagree.
 {¶ 14} In essence, appellants contend that appellees committed fraud when it was falsely represented that certain insurance policies were required to be purchased from appellees when, in actuality, they were optional.[4] However, appellants admit in the complaint that they signed papers "which attempted to insulate the Defendants from their illegal actions." Appellees argue that once appellants signed the papers, otherwise referred to as disclosures, which stated that the purchases of the various insurances were optional and voluntary, any claim based upon alleged oral misrepresentations or omissions that contradict the written terms of the disclosures signed by appellants could not be sustained as a matter of law.
 {¶ 15} Appellees essentially argue that appellants' fraud claim is barred by the parole evidence rule, citing Wakeman Oil Co., Inc. v.Citizens Nat'l Bank of Norwalk (September 13, 1996), Huron App. No. H-95-045.[5] "The parol evidence rule states that `absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'" Galmish v. Cicchini, 90 Ohio St.3d 22, 27,734 N.E.2d 782, (quoting 11 Williston on contracts (4th Ed. 1999) 569-570, Section 33:4). Generally, the parol evidence rule does not prohibit a party from introducing parol or extrinsic evidence for the purpose of proving fraudulent inducement." Id. "However, the parol evidence rule may not be avoided `by a fraudulent inducement claim which alleges that the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing. Marion Prod.Credit Assn. v. Cochran (1988), 40 Ohio St.3d 265, 533 N.E.2d 325, paragraph three of the syllabus. In other words, "[t]he Parol Evidence Rule will not exclude evidence of fraud which induced the written contract. But, a fraudulent inducement case is not made out simply by alleging that a statement or agreement made prior to the contract is different from that which now appears in the written contract. Quite to the contrary, attempts to prove such contradictory assertions is exactly what the Parol Evidence Rule was designed to prohibit." Wall v. PlanetFord, Inc., 159 Ohio App.3d 840, 850, 825 N.E.2d 686, 2005-Ohio-1207.
 {¶ 16} Appellants' fraud claims are based upon allegations that they were orally told that certain insurance coverages were required to be purchased in order to obtain the loans they sought, when, in fact, the insurance coverages were not required. A review of the complaint and documents supplied by appellee as attachments to their motion to dismiss and which were incorporated into the complaint, show that appellants signed disclosure forms which clearly stated that each of the insurance policies purchased by appellants in each of the various transactions were voluntary and not required to be purchased from appellees in order to obtain the loan(s).[6] Thus, appellants seek to directly contradict the written terms of disclosures. Such a claim cannot be sustained, as a matter of law. Accordingly, the trial court did not error when it granted appellant's motion to dismiss the fraud claim.
 {¶ 17} Appellants' first assignment of error is overruled.
 II {¶ 18} In the second assignment of error, appellants argue that the trial court erred when it granted appellee's Civ. R. 12(B)(6) motion on appellants' claims alleging negligence, breach of fiduciary duty, violation of the Ohio Mortgage Loan Act and violation of the Ohio Corrupt Practices Act claims. Appellants' arguments are primarily focused on an argument that the trial court's stated reason for dismissing the remaining claims is error. The trial court, in its September 10, 2004, Decision, found that all of appellants' claims should be dismissed because appellants signed disclosures which showed that the insurance coverages were optional and appellants had the right to refuse their purchase. Appellants contend that this rationale does not prevent them from obtaining relief, as a matter of law on their claims of negligence, breach of fiduciary duty, violation of the Mortgage Loan Act and violation of the Corrupt Practices Act. Appellees present various arguments in support of the trial court's decision.
 {¶ 19} We will first address appellants' argument that the trial court was wrong when it found that appellant's claims of negligence, breach of fiduciary duty, violation of the Ohio Corrupt Practices Act and violation of the Ohio Mortgage Loan Act were all based upon the assertion that appellees made a misrepresentation that they were required to purchase the various insurances in order to obtain the loans. Appellees argued and the trial court agreed that each of these claims should be dismissed because appellants signed disclosures that clearly stated that the purchases of the various policies were optional and voluntary.
 {¶ 20} We find that the trial court was correct when it found that appellants' claim that appellees violated the Ohio Corrupt Practices Act should be dismissed on this basis.[7] In this count, appellants asserted that appellees failed to inform appellants that the insurances purchased by appellants were optional and voluntary and fraudulently concealed the charges for the insurance policies. However, as discussed in assignment of error I, appellees disclosed that the purchases of these insurance policies were voluntary and not required to be purchased from appellees in order to obtain the loans. Further, a review of the complaint and the documents attached to or incorporated into the complaint demonstrates that the premiums for these optional insurance policies were disclosed. Accordingly, it was not error to grant the appellees' motion to dismiss on the count concerning violation of the Ohio Corrupt Practices Act.
 {¶ 21} However, we find that appellees' argument fails in regard to the claims concerning the alleged violation of the Ohio Mortgage Loan Act and the breach of fiduciary duty and negligence claims.
 {¶ 22} The Ohio Mortgage Loan Act, R.C. 3121.51 et seq., limits insurance coverages that may be required or offered by registrants who hold licenses under the Act. Appellants asserted in their complaint that American General is licensed under the Act and thereby required to comply with the Act. Appellants contend that American General sold insurance coverages not permitted by the Act.[8]
 {¶ 23} We find that the disclosure forms do not form a basis to dismiss appellant's count alleging a violation of Ohio's Mortgage Loan Act. Just because appellees disclosed the fact that the insurance policies purchased were optional and voluntary and disclosed the costs associated with those policies, does not mean that American General could sell the insurance policies without violating the Mortgage Loan Act.
 {¶ 24} Likewise, we do not find that the disclosure forms mandate a dismissal of the claims concerning breach of a fiduciary duty[9] and negligence.[10] In analyzing this issue, we will address another issue raised by appellees as a reason to dismiss these two claims. Specifically, appellees also contend that appellants' claims must be dismissed because American General owed no duty to appellants. Thus, because appellants, as plaintiffs, must prove the existence of a duty to succeed on a claim of breach of fiduciary duty or negligence, appellees argue that because there is no such duty, appellants cannot prove a set of facts that would entitle them to relief.
 {¶ 25} Appellees cite several cases for the proposition that American General did not owe a duty to appellants, fiduciary or otherwise. SeeBlon v. Bank One, Akron, N.A. (1988), 35 Ohio St.3d 98, 101,519 N.E.2d 363; Kingston Nat'l Bank v. Stulley (Sept. 28, 1990), Pike App. No. 443, 1990 WL 155741. Admittedly, the general rule is that a relationship of debtor and creditor, without more, is not a fiduciary relationship and no duty is owed by the creditor to the debtor. However, in their complaint, appellants cite to the case of Stone v. Davis
(1982), 66 Ohio St.2d 74, 419 N.E.2d 1094, for the proposition that American General and Merit Life owed appellants a fiduciary duty. InStone, the Ohio Supreme Court held that, under a limited factual situation, a fiduciary relationship could be created between a creditor and debtor when the debtor is seeking a loan. Although this exception to the general rule that a creditor does not owe a duty to a debtor is very narrow, it becomes a factual question as to whether appellants can establish that a fiduciary duty arose. As such, we find that the granting of the motion to dismiss was not appropriate, as a duty could have been created.
 {¶ 26} We find this argument equally applicable to appellants' negligence claim. In the negligence claim, appellants allege that the licensed insurance agents of Merit Life violated their duty to appellants. In Wanner Metak Worx, Inc. v. Hylant-Maclean, Inc. (April 7, 2003), Delaware App. No. 02CAE10046, 2003-Ohio-1814, this court recognized that a duty of care can arise between an insurance agency and their customer when the agency knows that the customer is relying upon the agency's expertise. Accordingly, it becomes a factual issue as to whether appellants and appellees had such a relationship. Thus, it was inappropriate to grant the motion to dismiss on the negligence count.
 {¶ 27} That leads us back to the issue as to whether the disclosures signed by appellants bar the negligence or breach of fiduciary duty claims. These claims could be based upon factual allegations separate from the issue of whether the appellants were told that the insurance coverages were required in order to obtain the loans. The claims could be based upon breaches of the fiduciary duty not related to those alleged misrepresentations. Thus, until the factual basis of these claims is established, it is possible that appellants could state a claim upon which they could be entitled to relief.
 {¶ 28} Appellees raise one additional, relevant issue in support of the trial court's decision. Appellees argue that the Ohio Mortgage Loan Act claim is barred by the applicable statute of limitations. Appellants respond that an assertion that the statute of limitations has run is an affirmative defense and that a Civ. R. 12(B)(6) motion is not the correct vehicle in which to raise such an affirmative defense.
 {¶ 29} We agree with appellants that it was not appropriate in this case to dismiss the Mortgage Loan Act claim based upon a statute of limitations argument. This affirmative defense is generally not properly raised in a Civ.R. 12(B)(6) motion, as it also typically requires reference to materials outside the complaint. Steiner v. Steiner (1993),85 Ohio App.3d 513, 518, 620 N.E.2d 152. Only when a violation of the statute of limitations is apparent from the face of the complaint may such an affirmative defense be raised in a Civ.R. 12(B)(6) motion. Helmanv. EPL Prolong, Inc. (2000), 139 Ohio App.3d 231, 241, 743 N.E.2d 484;Ware v. Kowars (Jan. 25, 2001), Franklin App. No. 00AP-450. For there to be a conclusive showing in that regard, the complaint must show both: (1) the relevant statute of limitations; and (2) the absence of factors which would toll the statute or make it inapplicable. Id.[11]
 {¶ 30} In the present case, appellants did not state the controlling statute of limitations in their complaint nor demonstrate the absence of factors that any might toll the statute or make it inapplicable.[12] As such, we find that appellees' argument in support of the trial court's decision fails.
 {¶ 31} Accordingly, appellant's second assignment of error is sustained, in part, and overruled, in part.
 {¶ 32} Upon due consideration of the arguments presented by the parties, we find that appellants' claims for negligence, breach of fiduciary duty and violation of the Ohio Mortgage Loan Act should not have been dismissed pursuant to Civ. R. 12(B)(6). Thus, to that extent, the trial court's Judgment Entry is reversed. The portion of the trial court's Judgment Entry that dismisses appellants' claims for fraud and the alleged violation of the Ohio Corrupt Practices Act is affirmed.
 {¶ 33} The judgment of the Muskingum County Court of Common Pleas is affirmed, in part, and reversed, in part. This matter is remanded for further proceedings consistent with this Opinion.
Edwards, J. Farmer, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Muskingum County Court of Common Pleas is affirmed, in part, and reversed, in part. This matter is remanded for further proceedings consistent with this Opinion. Costs assessed 50% to appellant and 50% to appellee.
[1] According to the complaint, the loans were dated March 28, 1996; September 6, 1996; February 19, 1997; September 26, 1997; May 8, 1998; November 17, 1998; May 21, 1999; and August 4, 1999.
[2] Civ. R. 12 (B)(6) states as follows: "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19 or Rule 19.1. . . ."
[3] We note that appellants' assignment of error actually alleges that the trial court erred when it found beyond doubt that appellants could prove no set of facts under which a reasonable juror could find in their favor concerning their claim of affirmative fraud. This assignment of error incorporates the wrong standard of review. Considerations of whether reasonable jurors could find in plaintiff's favor is relative to motions for summary judgment, Civ. R. 56(C), not motions to dismiss, Civ. R. 12(B). However, appellants argue the proper standard of review, which focuses on whether plaintiffs can prove a set of facts that would support their claim, in their argument. Accordingly, this Court has altered the recitation of appellants' first assignment of error to reflect the correct standard of review.
[4] In their first amended complaint, appellants asserted the following claim: "68. Defendants Mitchell, Fox, Updegrave and John Does 1 — 10, acting in the course and scope of their employment with American General and as agent for Defendants Merit and John Does 11-20, at the Maple avenue [sic] offices of Defendant American General on March 28, 1996, September 6, 1996, February 19, 1997, September 26, 1997, May 8, 1998, November 17, 1998, May 21, [1999] and August 4, 1999, which took place at the Maple Avenue, Zanesville office of Defendants, falsely represented certain single premium life insurance policies and/or personal property insurance policies, were legal and had the Plaintiffs sign papers in fine print of the loan the documents which attempted to insulate the Defendants from their illegal actions by stating to the Plaintiffs that said policies were legal and were required if Plaintiffs were to obtain these loans.
"69. Defendants Mitchell, Fox, Updegrave and John Does 1 — 10 acting in the course and scope of their employment with American General and as agents for defendants Merit, and John Does 11 — 20 also fraudulently concealed charges for other and additional insurance policies by presenting plaintiffs with the above loan documents in response to plaintiffs' request for a simple loan, when Mitchell, Fox, and Updegrave knew or should have known these policies and additional charges were included in those transactions, that plaintiffs never requested the policies, and that plaintiffs were not aware or made aware that those policies and the charges for them were optional or included in the transaction.
"70. These misrepresentations and concealment on March 28, 1996, September 6, 1996, February 19, 1997, September 26, 1997, May 8, 1998, November 17, 1998, May 21, [1999] and August 4, 1999, at the Maple Avenue, Zanesville office were fraudulent and were intended to induce plaintiffs to rely thereupon by signing the loan documents, thereby purchasing such policies without plaintiffs' knowledge or contractual intent, all to plaintiffs' financial detriment and the defendants' financial benefit.
"71. These misrepresentations and illegal acts and acts of concealment did wrongfully induce Plaintiffs unknowingly to purchase and pay for illegal policies and policies and charges which would not have been purchased or paid for save for their reasonable reliance thereupon.
"72. The fraudulent actions complained of herein caused plaintiffs' injury, including the amount of the policy premiums and the finance and other charges attributable thereto.
"73. Further, these actions were illegal, knowing, intentional, and deliberate, taken in reckless disregard of the plaintiffs' rights and interests, and/or of defendants' duties and obligations, so as to constitute malice under law." First Amended Complaint, Count Four, Fraud."
[5] Appellees raise numerous other arguments. However, as we find the above reasoning to be dispositive, these other arguments will not be addressed.
[6] When considering a motion to dismiss made pursuant to Civ. R. 12(B) (6), a court's review is limited to the complaint and documents attached to the complaint. Not all of the documents reviewed in this matter were attached to the complaint. Some of the relevant disclosures were provided by appellees as attachments to their motion to dismiss. However, it is appropriate to review documents that were incorporated into the complaint, even if not attached to the complaint. Fillmore v. BrushWellman, Inc., Ottawa App. OT-03-029, 2004-Ohio-3448 (citing ConnollyConstr. Co. v. The City of Circleville (Mar. 16, 1988), 3rd Dist. No. 9-87-10; Weiner v. Klais Co. (C.A.6, 1997), 108 F.3d 86, 89). The disclosures provided by appellees had been incorporated into the complaint by appellants when they referred to signing disclosures and provided copies of the accompanying loan documents as attachments.
[7] In the count concerning violation of the Ohio Corrupt Practices Act, appellants allege the following:
"74. Defendants regularly conduct business through an association in fact involving American General Finance Inc, Merit Life Insurance Company, John Does 11-20, the individually named defendants, John Does 1-10 and others as active participants on behalf of various third party insurance companies.
"75. Defendants therefore engage in the business of insurance solicitation and sale as and through an enterprise as defined in Revised Code [section] 2923.31.
"76. The affairs of this enterprise customarily involve the use of the mails and other means of interstate commerce including telephone and date transmission lines.
"77. In their dealings with plaintiffs, defendants conducted the affairs of the enterprise through actions which constituted mail fraud, wire fraud, theft and extortion. These corrupt acts included but are not limited to fraudulent concealment and fraudulent charges for policy premiums and false representations on loan documents relating to federally insured mortgage loans, involving amounts in excess of $500.00.
"78. Defendants have therefore conducted the affairs of this enterprise through a pattern of corrupt activity in violation of Revised Code [section] 2923.24." First Amended Complaint, Count Five, Corrupt Practices Act.
[8] Specifically, appellants allege the following in their complaint:
"53. All loans made to, payments received under, and the refinancings undertaken by Plaintiffs and the class members were subject to Ohio's Second Mortgage Security Act O.R.C. [Sec.] 1321.51 — 1321.60.
"54. Defendant American General has obtained a license under the Second Mortgage Loan Act which prohibits it from engaging in lending practices which violate that Act, including the sale, imposition or collection of interest, fees, commissions, costs, or charges for insurance products other than those expressly authorized by statute in such loan transactions.
"55. O.R.C. [Sec.] 1321.57 sets forth the only types of insurance that can be sold in a Second Mortgage Loan transaction and therefore limits the interest, fees, commissions, costs, or charges than can lawfully be imposed upon such borrowers, to: "A registrant, at the request of the borrower, may obtain, on one or more borrowers, credit life insurance, credit accident and health insurance, and unemployment insurance . . . O.R.C. [Sec.] 1321.57
"56. On information and belief, Defendants willfully and customarily violate the duties and the proscriptions of the Second Mortgage Loan Act and O.R.C. [Sec.] 1321.57 in these loan transactions by selling, charging for, and receiving charges for other and additional types of excess insurance not expressly allowed by Sec. 3127.57, including single premium life insurance policies not constitution [sic] "credit life insurance" and/or personal property insurance on household goods as to which American General can take no valid security interest.
"57. This continuous course of conduct on and after December 8, 1997 was also illegal, fraudulent and a corrupt practice." First Amended Complaint, Count One.
[9] Appellants' complaint states the following claims:
BREACH OF FIDUCIARY DUTY
"58. Plaintiffs are unsophisticated in financial matters and have limited ability to accurately identify or understand all but the simplest financial transactions.
"59. This fact is or should be apparent to any person attempting to engage them in any such transactions.
"60. Defendants Mitchell, Fox, Updegrave and John Does 1 — 10, in the course and scope of their employment with Defendant American General, and as INSURANCE agents for defendants Merit and John Does 11 — 20 knew or should have known for that reason and from their course of dealing with the Plaintiffs prior to and during the transactions at issue, that as a result of the above plaintiffs were required to and reasonably did repose special trust and confidence in them to advise and deal with Plaintiffs honestly and in accord with their best interests.
"61. These Defendants therefore knew or should have known that they stood in a position of superiority and advantage as to Plaintiffs' dealings with defendants.
"62. For these reasons, in undertaking to identify, select, procure, and sell various illegal insurance products presumably for Plaintiffs' benefit or protection but at their cost, defendants American General, Mitchell, Fox, Updegrave, John Does 1 — 20, and Merit Life owed plaintiffs the duty of fiduciaries. See Stone v. Davis (1982),66 Ohio St.2d 74.
"63. The Defendants continuing course of conduct from October 16, 1995 through August 4, 1999, by selling illegal single premium life insurance and personal property insurance policies, using subsequent loans to pay off said premiums, and/or to sell new single premium life insurance policies and/or personal property insurance policies, as well as other actions or failure to act complained of above, breached these duties in that the policies and coverage selected and included in these financial transactions were illegal and unconscionable.
"64. However, because of plaintiffs' limitations and lack of sophistication it was not until plaintiffs sought the advice of counsel on a different matter in November 2000 that they first learned of the Defendants' illegal actions and breach of these duties.
"65. Defendants' continuing and ongoing illegal and tortious conduct and violation of these duties caused plaintiffs injury, including but not limited to the policy premiums and the finance and other charges attributable thereto.
"66. Further, these actions were knowing, intentional, and deliberate, as well as illegal, and taken in reckless disregard of the Plaintiffs' rights and interests, and/or of defendants' duties and obligations, so as to constitute malice under law." First Amended Complaint, Count Two.
[10] In the negligence count, appellants allege that "[t]he actions or failure to act of Defendants while acting as licensed insurance agents for Merit Life in relation to the matters in which plaintiffs were in privity with defendants breached duties owed Plaintiffs as a matter of law, and were also negligent and/or grossly negligent, causing Plaintiffs to suffer direct economic injury. No claim is made for recovery of any indirect economic losses." First Amended Complaint, Count Three.
[11] Because Ohio is a notice pleading state, it suffices that the complaint put defendants on notice of the general claim. It was not necessary to specify facts to defend from a statute of limitations defense. Mills v. Deehr, Cuyahoga App. No. 82799, 2004-Ohio-2338.
[12] In this case, the parties disagree as to the length of the applicable statute of limitations and whether there is a means by which the statute of limitations would be a means by which the statute of limitations could be tolled. However, as these issues are beyond the face of the complaint, this court cannot address those issues at this point.