[Cite as *Ajibola v. Ohio Med. Career College, Ltd.*, 2018-Ohio-4449.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| ASIA AJIBOLA, et al. | : | |
| | : | |
| Plaintiffs-Appellants | : | Appellate Case No. 27975 |
| | : | |
| v. | : | Trial Court Case No. 2017-CV-2373 |
| | : | |
| OHIO MEDICAL CAREER COLLEGE, | : | (Civil Appeal from |
| LTD., et al. | : | Common Pleas Court) |
| | : | |
| Defendants-Appellees | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of November, 2018.

. . . . . . . . . . .

RICHARD A. F. LIPOWICZ, Atty. Reg. No. 0018241, 130 West Second Street, Suite 1900, Dayton, Ohio 45402
    Attorney for Plaintiffs-Appellants

W. JOSEPH SCHOLLER III, Atty. Reg. No. 0072764 and CHARLES B. GALVIN, Atty. Reg. No. 0091138, 9277 Centre Point Drive, Suite 300, West Chester, OH 45069
    Attorneys for Defendants-Appellees

. . . . . . . . . . . . .

FROELICH, J.

**{¶ 1}** Felecia Madison and Yvette Hubbard appeal a Montgomery County Common Pleas Court judgment that dismissed with prejudice their claims for breach of contract, negligence, and fraud, as well as their claims brought under the Ohio Consumer Sales Practices Act ("OCSPA"). The judgment of the trial court will be reversed and the matter remanded for further proceedings consistent with this opinion.

### *Factual Background and Procedural History*

**{¶ 2}** The Ohio Medical Career College, Ltd. ("the College") is a for-profit nursing school in Dayton, Ohio, that is owned and operated by Nick Xu and Daisy Deng, a married couple. Xu acts as the College's School Director and Deng as its Program Director.

**{¶ 3}** Sometime prior to February 29, 2016, Madison and Hubbard each explored the educational offerings available through the College. According to the complaint, representatives of the College orally represented to Madison and Hubbard that the College "offered clinical courses in hospital settings" and that Madison and Hubbard "would graduate with an Associate's Degree in Applied Sciences in Nursing" if they successfully completed the College's "One Plus One Nursing Education Program (RN)." However, Madison and Hubbard claimed that no one from the College disclosed that, in order to graduate from that program, students must score at least 850 on the Health Education Services, Inc. ("HESI") exam, a standardized test used to predict success on the NCLEX examination for licensure as a nurse. They further alleged that representatives of the College failed to disclose that the College's associate degree program was on "conditional" status with the Ohio Department of Nursing.[1]

---

[1] As to the amended complaint's additional allegation that Madison and Hubbard were not

{¶ 4} According to the complaint, in reliance on the above representations and omissions, Madison and Hubbard enrolled in the College's One Plus One program in February 2016. Each received a student handbook that described the One Plus One program and sets forth the following "Student Completion Requirement Policy":

In order to graduate from the nursing program, the following criteria must be met:

1. Successful completion of all required credit hours and clinical instruction hours of the program. All assignments must be completed in the proper format.

2. Pass all courses (including general education courses) with a minimum grade of "C" or "Satisfactory".

3. Satisfactory attendance progress must be met as outlined in the Attendance Policy.

4. All financial responsibilities must be satisfied prior to graduation.

5. Return of all parking permits, locks, library books, as well as school and/or other ID cards.

The program does not implement changes to policies for requirements for completion of the program regarding students already enrolled in the program at the time the changes are adopted.

---

told that the College's One Plus One program "was on 'provisional' status" with the Ohio Board of Nursing, the trial court took judicial notice that such program in fact was *not* on provisional status when Madison and Hubbard enrolled. (*See* 4/9/18 Decision, Order and Entry Sustaining Defendants' Motion to Dismiss, p. 4, and 7/28/17 Motion to Dismiss, Exh. F, Affidavit of Charles B. Galvin, ¶ 9 & Exhs. 3-4 thereto). Madison and Hubbard have not challenged that finding on appeal, and the "provisional" allegation therefore is not germane to our current analysis.

**{¶ 5}** In addition, the handbook provided that "[e]ach course has a syllabus which includes the title, number of theory hours, lab hours or clinical hours, course description, objectives or outcomes, outline, teaching strategies, methods of evaluation, and requirements for successful completion of the course." Listed among the courses required for graduation is "NUR 207: Professional Transitions," described in the handbook as follows:

> This integrative course utilizes all previous course work to prepare the student to pass the NCLEX-RN. Topics include strategies and techniques for test taking [and] developing critical thinking and discrimination, and prepare the student for a successful career as a registered nurse. A lab component allows the student computer-assisted instruction to prepare for the NCLEX RN.

**{¶ 6}** In January 2017, Madison and Hubbard began what was to have been their program's final term of study, which included the "NUR 207" class. At the start of that course, they were given an "Assignments Schedule" advising that all students would be required to attain a score of at least 850 on the HESI exam in order to pass NUR 207.

**{¶ 7}** Despite taking the HESI exam twice during the term, Madison and Hubbard were among five of the College's students who failed to achieve the requisite 850 score and therefore did not graduate. Pursuant to Ohio Adm.Code 3332-1-18, those five students sought administrative relief by filing complaints with the Ohio Board of Career Colleges and Schools ("the Board"). In separate decisions issued on May 19, 2017, the Board advised each complainant that the Board found "no violations" of the College's "policies, procedures and NUR 207 syllabus," and recommended that the students "retake

NUR 207 in order to pass your program and be eligible for the NCLEX."

**{¶ 8}** Madison, Hubbard and the other three students[2] then filed a complaint against the College, Xu, and Deng in the Montgomery County Common Pleas Court, which complaint they later amended, setting forth claims for injunctive relief, breach of contract, negligence, fraud, and violations of OCSPA. The College, Xu and Deng moved pursuant to Civ.R. 12(B)(6) to dismiss the amended complaint in its entirety.

**{¶ 9}** On April 9, 2018, the trial court granted the defendants' motion and dismissed the entire complaint. In reaching that decision, the trial court took judicial notice of certain documents not attached to the complaint that the court nonetheless determined were verifiable and "beyond reasonable dispute."

**{¶ 10}** Madison and Hubbard appeal from that final judgment, asserting four assignments of error:

1. The trial court erred in dismissing Appellants' claim for fraud.

2. The trial court erred in dismissing Appellants' claims under [OCSPA].

3. The trial court erred in dismissing Appellants' breach of contract claim.

4. The trial court erred in dismissing Appellants' negligence claims.

### *Standard of Review*

**{¶ 11}** "An order granting a Civ.R. 12(B)(6) motion to dismiss is subject to de novo review." *Duer v. Henderson*, 2d Dist. Miami No. 2009 CA 15, 2009-Ohio-6815, ¶ 68, quoting *Perrysburg Twp. v. Rossford,* 103 Ohio St.3d 70, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. This means the appellate court "must independently review the complaint to

---

[2] Although five Plaintiffs joined in the complaint and were affected by the trial court's final decision, only Madison and Hubbard remain as parties on this appeal.

determine whether dismissal is appropriate." *Boyd v. Archdiocese of Cincinnati*, 2d Dist. Montgomery No. 25950, 2015-Ohio-1394, ¶ 13, quoting *Ament v. Reassure Am. Life Ins. Co.,* 180 Ohio App.3d 440, 2009-Ohio-36, 905 N.E.2d 1246, ¶ 60 (8th Dist.).

**{¶ 12}** In conducting that review, we are "bound to assume that the facts pleaded in the complaint are true, but the same does not apply to conclusions of law that the pleader contends are proved by those facts." *Thomas v. Progressive Cas. Ins. Co., Inc.*, 2011-Ohio-6712, 969 N.E.2d 1284, ¶ 8 (2d Dist.). We are not to consider "unsupported conclusions that may be included among, but not supported by, the factual allegations of the complaint." *Boyd* at ¶ 13, quoting *Wright v. Ghee,* 10th Dist. Franklin No. 01AP-1459, 2002-Ohio-5487, ¶ 19.

**{¶ 13}** Although the rule itself states that matters to be considered on a Civ.R. 12(B)(6) motion are limited to those that appear within the relevant pleading, material incorporated within a complaint is part of that pleading. *Boyd* at ¶ 14, citing *State ex rel. Crabtree v. Franklin Cty. Bd. of Health,* 77 Ohio St.3d 247, 249, 673 N.E.2d 1281, fn. 1, (1997) ("Material incorporated in a complaint may be considered part of the complaint for purposes of determining a Civ.R. 12(B)(6) motion to dismiss."). Such material includes not only exhibits to a complaint, but also written instruments "upon which a claim is predicated," regardless of whether such material actually is attached to the pleading. *Id.*, citing *Columbus Green Bldg. Forum v. State,* 2012-Ohio-4244, 980 N.E.2d 1, ¶ 23 (10th Dist.), *Fillmore v. Brush Wellman, Inc.,* 6th Dist. Ottawa No. OT-03-029, 2004-Ohio-3448, ¶ 8, *Irvin v. Am. Gen. Fin., Inc.,* 5th Dist. Muskingum No. CT2004-0046, 2005-Ohio-3523, ¶ 6.

**{¶ 14}** To dismiss a complaint under Civ.R. 12(B)(6), "it must appear beyond doubt

that the plaintiff can prove no set of facts * * * that would entitle the plaintiff to the relief sought." *Bolin v. Allstate Property & Cas. Ins. Co.*, 2d Dist. Montgomery No. 27764, 2018-Ohio-3396, ¶ 16, quoting *Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814, ¶ 12; *see also Sacksteder v. Senney*, 2d Dist. Montgomery No. 24993, 2012-Ohio-4452, ¶ 35-46. "The standard for dismissal under Civ.R. 12(B)(6) is consistent with Civ.R. 8(A), which requires that a complaint 'contain * * * a short and plain statement of the claim [or claims] showing that the [plaintiff] is entitled to relief.' " *Id.*, quoting *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, ¶ 29.

### First Assignment of Error –Fraud Claims

{¶ 15} The elements of fraud are:

(1) a representation (or concealment of a fact when there is a duty to disclose), (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance.

*Schroeder v. Henness*, 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 19, citing *Volbers-Klarich v. Middletown Mgt., Inc.,* 125 Ohio St.3d 494, 2010-Ohio-2057, 929 N.E.2d 434, ¶ 27.

{¶ 16} Consistent with the foregoing, "[a]n action for fraud may be grounded upon failure to fully disclose facts of a material nature where there exists a duty to speak." *Lone Star Equities, Inc. v. Dimitrouleas*, 2015-Ohio-2294, 34 N.E.3d 936, ¶ 61 (2d Dist.), citing

*Layman v. Binns,* 35 Ohio St.3d 176, 178, 519 N.E.2d 642 (1988). We have recognized that, before consummating a transaction, a party aware of information "necessary to prevent his partial or ambiguous statement of the facts from being misleading" is "under a duty to exercise reasonable care to disclose" such information. *See Jack Turturici Family Trust v. Carey,* 196 Ohio App.3d 86, 2011-Ohio-4194, 962 N.E.2d 347, ¶ 28-30 (2d Dist.), quoting 3 Restatement of the Law 2d, Torts, Section 551 (1977).

**{¶ 17}** Madison and Hubbard contend that the trial court erred by dismissing their fraud claims. They argue that the amended complaint's allegations that they enrolled in the One Plus One nursing program based on certain false statements and material omissions attributable to the College suffice for purposes of Civ.R. 12(B)(6) to state a viable cause of action for fraud.

**{¶ 18}** In response, the College, Xu, and Deng first urge that Madison and Hubbard waived certain aspects of their fraud claims by failing to appeal the Ohio Board of Career Colleges and Schools' administrative decision pursuant to R.C. 119.12(D).[3] They also maintain that no private cause of action exists for violations of the Ohio Administrative Code. Furthermore, Appellees contend that even if Madison and Hubbard are not precluded from pursuing claims for alleged violations of the Ohio Administrative Code, they cannot establish the requisite elements of fraud. Specifically, the College, Xu, and Deng argue that the alleged misrepresentations and omissions Madison and Hubbard identify were not material to their enrollment decisions, that Madison and Hubbard did not

---

[3] Although the trial court did not address this waiver argument, we note that Appellees did raise the same argument in their motion to dismiss, thereby preserving that issue for our consideration. *See Poliseno v. Mitchell,* 10th Dist. Franklin Nos. 09AP-1001, 09AP-1022, 2010-Ohio-2615, ¶ 24.

reasonably rely on those alleged statements and omissions, and that Madison and Hubbard cannot prove any damages because they failed to successfully complete the One Plus One program's graduation requirements.

*a. Waiver and No Private Cause of Action*

{¶ 19} Although the pleadings contain no evidence regarding the Ohio Board of Career Colleges and Schools' decision on Madison and Hubbard's administrative complaints under Ohio Adm.Code 3332-1-18, the trial court took judicial notice of the Board's letters advising each complainant that it found "no violations" by the College.[4] Regardless of the propriety of such judicial notice, we find that Madison's and Hubbard's failure to appeal the Board's administrative decision does not preclude them from premising a fraud claim in part on the College's alleged failure to timely advise them that they could not graduate without achieving a minimum score of 850 on the HESI exam.

{¶ 20} The amended complaint asserts that the College violated Ohio Adm.Code 3332-1-16(B)(1)(c)[5] by failing to advise prospective students of the HESI score requirement. Read more broadly per the requirements under Rule 12(B)(6), however, that pleading also can be construed to allege that, irrespective of the requirements of the administrative code, the College had a duty to advise Madison and Hubbard of prerequisites to graduation that they claim would have influenced their decision to enroll.

---

[4] *See* 4/9/18 Decision, Order and Entry Sustaining Defendants' Motion to Dismiss, p. 4, and 7/28/17 Motion to Dismiss, Exh. D (5/19/17 letter from State Board of Career Colleges and Schools to Yvette Hubbard) and Exh. E (5/19/17 letter from State Board of Career Colleges and Schools to Felecia Madison).

[5] There, the code requires all approved career college programs of instruction to "concisely and accurately convey[ ] * * * graduation requirements" to any prospective student.

Accordingly, while Madison and Hubbard may have waived their right to an administrative remedy by failing to appeal the Board's administrative decision, we determine that they did not relinquish their right to pursue a separate civil action by declining to undertake an administrative appeal.

{¶ 21} Our conclusion that a duty to disclose could arise independent of the administrative code provisions also disposes of Appellees' assertion that no private right of action exists for violations of Ohio Adm.Code 3332-1-16(B)(1)(c). Madison and Hubbard's fraud claims are not dependent on the existence of an administrative code violation. Accordingly, we will proceed to examine the sufficiency of Madison and Hubbard's fraud allegations under Civ.R. 12(B)(6) standards.

*b. Sufficiency of Fraud Allegations*

{¶ 22} Having reviewed the allegations set forth in the amended complaint, we are not persuaded that Madison and Hubbard "can prove no set of facts" that would entitle them to the relief they seek on their fraud claims. *See Bolin*, 2d Dist. Montgomery No. 27764, 2018-Ohio-3396, at ¶ 16. To the contrary, Madison and Hubbard have set forth all the facts necessary to state a viable cause of action for fraud. See *Schroeder.* 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, at ¶ 19. Specifically, Madison and Hubbard allege that agents of the College falsely represented that the One Plus One program would include clinical experience in hospital settings and would lead to an associate degree in nursing. They further allege that the College's representatives failed to disclose that an associate degree was not available through the One Plus One program and that students would need to score 850 or above on the HESI exam in order to graduate. In addition, Madison and Hubbard claim to have relied on the College's false representations

and omissions to their detriment when they enrolled in the One Plus One program. Accepted as true for purposes of Civ.R. 12(B)(6), Madison and Hubbard's factual allegations adequately articulate the requisite elements of a fraud claim.

**{¶ 23}** We are not dissuaded from that conclusion by the College, Xu, and Deng's denial that they had a duty to disclose either the HESI exam score requirement or the unavailability of an associate degree through the One Plus One program. Especially given the student handbook's explicit "Student Completion Requirement Policy," a reasonable trier of fact could find that omission of the HESI exam score requirement from that list might mislead prospective students, thereby creating a duty for the College to disclose the missing information. *See Jack Turturici Family Trust*, 196 Ohio App.3d 86, 2011-Ohio-4194, 962 N.E.2d 347, at ¶ 28-30. At this stage of the proceedings, we cannot say as a matter of law that Madison and Hubbard would be unable to show they were misled by the allegedly inaccurate or incomplete information the College provided.

**{¶ 24}** Additionally, while Appellees characterize the alleged misrepresentations and omissions as immaterial to Madison and Hubbard's enrollment decisions, Madison and Hubbard maintain that they relied on the information presented in deciding that the One Plus One program "might lead to better job opportunities" because that program offered more immersive clinical experience and an associate degree rather than a diploma. Although Appellees also urge that Madison's and Hubbard's reliance was unjustified because "accurate and reliable information" about the College's programs was available "in the public domain," they offer no authority to support that proposition.

**{¶ 25}** Conversely, this court has stated that "[r]eliance is justifiable if the representation does not appear unreasonable on its face and if there is no apparent

reason to doubt the veracity of the representation under the circumstances." *Amerifirst Savings Bank of Xenia v. King*, 196 Ohio App.3d 468, 495, 737 N.E.2d 68 (2d Dist.1999), citing *Lepera v. Fuson*, 83 Ohio App.3d 17, 26, 618 N.E.2d 1060 (1st Dist.1992). Moreover, "[t]he question of justifiable reliance is one of *fact* and requires an inquiry into the relationship between the parties." (Emphasis added.) *Id.*, quoting *Crown Prop. Dev., Inc. v. Omega Oil Co.*, 113 Ohio App.3d 647, 657, 681 N.E.2d 1343 (12th Dist.1996); *see also Mulch Mfg., Inc. v. Advanced Polymer Solutions, LLC*, 947 F.Supp.2d 841, 862 (S.D.Ohio 2013). We reject the notion that Madison and Hubbard were obliged as a matter of law to check other sources in order to verify or refute the information provided by the College itself. Because the issue of justifiable reliance is one of fact, it cannot be resolved via a Civ.R. 12(B)(6) motion to dismiss.

{¶ 26} Finally, we conclude that the trial court erred in finding that Madison and Hubbard are unable to prove any damages caused by the alleged fraud. The trial court reasoned, and Appellees argue on appeal, that because Madison and Hubbard failed to graduate and cannot take the NCLEX licensing exam, their job prospects were unaffected by the One Plus One program's lack of in-hospital clinical training and ineligibility to award an associate degree. Notably, however, the amended complaint avers not that Appellees committed fraud in how they performed an existing contract, but rather that the College and its representatives fraudulently induced Madison and Hubbard to enter enrollment agreements with the College. The distinction between fraud in performing a contract and fraud in inducing that contract may be significant. *See, e.g., Curt Collins Co., Inc. v. Dudich*, 9th Dist. Summit No. 8022, 1976 WL 188882, *4 (Aug. 18, 1976) ("It should be kept in mind that the fraud here was in the inducement and not the performance of the

contract."). "A party who has been fraudulently induced to enter into a contract has the option of rescinding the contract or seeking damages based upon the tort of fraudulent inducement." *Simon Property Group, LP v. Kill*, 3d Dist. Allen No. 1-09-30, 2010-Ohio-1492, ¶ 30. The measure of damages for fraudulent inducement would be "the actual natural losses flowing from the fraud." *Curt Collins Co.* at *4; *see also Simon Property Group* at ¶ 30 (sustaining trial court's ruling that plaintiff was not required to pay increased rent owed under new lease induced through fraud).

{¶ 27} This court, too, has recognized that a plaintiff's out-of-pocket losses incurred due to the parties' contract may be the appropriate measure of damages for a claim of fraudulent inducement. *See Wright v. Spaghetti Place, Inc.*, 2d Dist. Montgomery No. 8110, 1984 WL 4418, *5 (May 8, 1984); *see also Melenick v. McManamon*, 8th Dist. Cuyahoga Nos. 92453, 92675, 2010-Ohio-1051, ¶ 42 ("Generally, a party injured by fraud can receive [any] damages 'naturally and proximately resulting from the fraud.' "). Because the amended complaint adequately alleges that Madison and Hubbard would not have incurred the cost of tuition and other expenses of matriculating in the One Plus One program but for the College's allegedly fraudulent conduct, they have set forth factual allegations sufficient to withstand a Civ.R. 12(B)(6) motion to dismiss on the issue of damages. Madison and Hubbard's first assignment of error is sustained.

### *Third Assignment of Error –Breach of Contract Claims*

{¶ 28} Madison and Hubbard contend that the trial court also erred in dismissing their claims for breach of contract. The parties apparently agree that the contract between Madison and Hubbard and the College consisted of the Enrollment Agreements Madison and Hubbard signed, together with the student handbook. The amended complaint

alleges that the College breached that contract by, among other things, imposing a minimum HESI exam score as a graduation requirement that was not mentioned within the student handbook's "Student Completion Requirement Policy." The trial court, however, found that "[a] minimum score on the HESI exam was a class requirement" for the NUR 207 course, "just like any other test, quiz or lab assignment," and "did not violate" the student handbook or the Enrollment Agreements.

**{¶ 29}** In so finding, the trial court relied heavily on *Hendrix v. Northern Kentucky Univ.*, E.D.Ky. No. 2:14-cv-00079 (WOB-CJS), 2015 WL 7430149 (Aug. 10, 2015), a case involving substantially similar facts. Significantly, however, the *Hendrix* decision was before the federal district court on a motion for summary judgment, *not* a Civ.R. 12 motion to dismiss. *See id.* at *1. Accordingly, the court there was not constrained, as we are, "to assume that the facts pleaded in the complaint are true." *See Thomas*, 2011-Ohio-6712, 969 N.E.2d 1284, at ¶ 8. Unlike the court that decided *Hendrix*, we may uphold the decision against Madison and Hubbard only if it "appear[s] beyond doubt" that they "can prove no set of facts * * * that would entitle [them] to the relief sought." *See Bolin*, 2d Dist. Montgomery No. 27764, 2018-Ohio-3396, at ¶ 16.

**{¶ 30}** Just as we determined above with respect to Madison and Hubbard's fraud claims, we cannot conclude at this juncture that Madison and Hubbard would be unable to prove any set of facts that might warrant relief on their breach of contract claims. In this case, Madison and Hubbard contend that Program Director Deng actually admitted to them that the minimum HESI score was not merely a component of one course, but rather "a separate graduation requirement." Other disputed or distinguishing issues of fact may

remain.[6] For that reason, Madison and Hubbard's third assignment of error is sustained.

### *Fourth Assignment of Error –Negligence Claims*

{¶ 31} We reach a similar conclusion as to Madison and Hubbard's contentions regarding a portion of their negligence claims dismissed by the trial court. "The elements of negligent misrepresentation are as follows: 'One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.' " (Emphasis sic.) (Citations omitted.) *Delman v. Cleveland Hts.*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835 (1989).

{¶ 32} Citing *Lawrence v. Lorain Cty. Community College*, 127 Ohio App.3d 546, 713 N.E.2d 478 (9th Dist.1998), the trial court determined that Madison and Hubbard's allegations of negligence amounted to "a claim for substandard educational services" not cognizable under Ohio law. On appeal, Madison and Hubbard do not challenge the *Lawrence* holding, but urge that their amended complaint includes allegations distinguishable from those before the court in *Lawrence*. We agree.

{¶ 33} As described by the Ninth District Court of Appeals in that case:

Lawrence maintains that, upon payment of tuition, the College gave him a catalog of course offerings and academic policies. He alleges that this catalog constituted a contract under which the College was to provide him

---

[6] For example, a factual question exists as to whether the "Assignments Schedule" provided to Appellants at the outset of their NUR 207 course satisfied the student handbook's requirement that the College produce a "syllabus" for each course.

a degree as a registered nurse. He then asserts that the College breached its contract with him "by providing substandard education, guidance and supervision[.]"

*Id.* at 548. Agreeing that such claims "mask[ed] allegations of educational malpractice" barred as a cause of action in Ohio, the appellate court affirmed the trial court's dismissal of those claims under Civ.R. 12(B)(6). *Id.* at 549.

{¶ 34} The negligence cause of action within Madison and Hubbard's complaint does contain comparable allegations of negligent supervision and negligent failure "to provide * * * proper instruction, remediation, and text materials." In contrast to the allegations described in *Lawrence*, however, Madison and Hubbard also affirmatively allege that the College and its agents "negligently made false or misleading representations" to them. For the reasons discussed in the context of their fraud claims, Madison and Hubbard's allegations suffice to set forth a viable claim for negligent misrepresentation, distinguishable from the purported claims for breach of contract and breach of the duty of good faith and fair dealing found in *Lawrence* to have been properly dismissed. Madison and Hubbard's fourth assignment of error therefore is sustained as to the trial court's dismissal of their claims for negligent misrepresentation.

### *Second Assignment of Error –OCSPA Claims*

{¶ 35} Madison and Hubbard's remaining assignment of error challenges the trial court's dismissal of their claims under the Ohio Consumer Sales Practices Act. In dismissing those claims, the trial court relied on the rationale for its dismissal of Madison and Hubbard's negligence and fraud claims, stating that the facts alleged in the amended complaint, "even presumed as true, do not support a cause of action for violations of

OCSPA."

**{¶ 36}** Having determined above that Madison and Hubbard's factual allegations state claims for both fraud and negligence sufficient to withstand a Civ.R. 12(B)(6) motion to dismiss, we likewise conclude that the trial court erred by dismissing Madison and Hubbard's OCSPA claims premised on those same factual allegations. Pursuant to Ohio Adm.Code 109:4-3-10(A),

> It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to:
>
> (A) Make any representations, claims, or assertions of fact, whether orally or in writing, which would cause a reasonable consumer to believe such statements are true, unless, at the time such representations, claims, or assertions are made, the supplier possesses or relies upon a reasonable basis in fact such as factual, objective, quantifiable, clinical or scientific data or other competent and reliable evidence which substantiates such representations, claims, or assertions of fact;
>
> * * *

**{¶ 37}** It is undisputed for purposes of this appeal that the College is a "supplier," that Madison and Hubbard are "consumer[s]," and that their contract for educational services was a "consumer transaction" within the meaning of the foregoing regulation. While Appellees characterize Madison and Hubbard's OCSPA claims as "nothing more than a dressed-up claim for educational malpractice," we previously determined that Madison and Hubbard's factual allegations go beyond those found to present only a non-cognizable claim for educational malpractice. *See Lawrence*, 127 Ohio App.3d at 548-

549, 713 N.E.2d 478. For that reason, Madison and Hubbard's second assignment of error is sustained.

### Conclusion

**{¶ 38}** The judgment of the trial court will be reversed, and this matter will be remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.

Copies sent to:

Richard A. F. Lipowicz
W. Joseph Scholler III
Charles B. Galvin
Phyllis Brown
Adam Brown
Chevelle Bennett
Hon. Barbara P. Gorman