[Cite as *Krueck v. Youngstown State Univ.*, 2019-Ohio-3219.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

ASHLEY KRUECK

    Appellant

    v.

YOUNGSTOWN STATE UNIVERSITY

    Appellee

C.A. No.    18CA011391

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    18CV195060

DECISION AND JOURNAL ENTRY

Dated: August 12, 2019

HENSAL, Judge.

{¶1} Ashley Krueck appeals from the judgment of the Lorain County Court of Common Pleas. This Court reverses.

I.

{¶2} This appeal presents two issues: whether the Court of Common Pleas – as opposed to the Court of Claims – had jurisdiction over Ms. Krueck's claim against Youngstown State University ("YSU") for violations of the Consumer Sales Practices Act ("CSPA") and, if so, whether the trial court erred by determining that Ms. Krueck failed to state a claim upon which relief can be granted. We will begin with a review of the pertinent facts.

{¶3} According to her complaint, Ms. Krueck enrolled in Lorain County Community College, intending to earn a four-year degree. During her second year, Ms. Krueck began looking for a four-year-degree program that would allow her to complete her education and obtain certification as a nursing home administrator. Ms. Krueck was aware that nursing home

administrators are licensed and regulated by the Ohio Board of Executives of Long-Term Services and Supports ("BELTSS"). She was also aware that prospective nursing home administrators had to meet certain educational requirements, and then apply to BELTSS for approval to sit for the state and national licensing exams.

{¶4} The parties do not dispute that there are two ways to satisfy the BELTSS educational requirements: (1) complete a bachelor's degree in any field, complete an approved "core of knowledge" course, and complete a 1,500-hour internship; or (2) complete a BELTSS-approved nursing home administrator program, which allows potential candidates to sit for the state and national licensing exams without the "core of knowledge" course or 1,500-hour internship.

{¶5} Ms. Krueck reviewed the materials related to YSU's Long Term Care Administrator ("LTCA") program, which included a statement that "[g]raduates of the LTCA program are *eligible* to sit for the national and state licensure exams." (Emphasis added.) Another document included statements that:

> Licensed graduates of the long term care administration program at [YSU] are eligible to become assistant administrators * * *.
>
> * * *
>
> The primary focus of the long term care administration program at [YSU] is to prepare students to become * * * licensed administrators in nursing and convalescent homes, retirement communities and related healthcare industries.
>
> Graduates receive a Bachelor of Science in Applied Science in long term care administration and are *eligible* to sit for the national and State of Ohio licensing examinations.

(Emphasis added.)

{¶6} Ms. Krueck understood the foregoing to mean that YSU's program was BELTSS approved, and that completion of the program would allow her to sit for the state and national

licensing exams without having to complete the core-of-knowledge course or 1,500-hour internship. After spending more than one year in the program, Ms. Krueck learned that YSU's program was not BELTSS approved. She sought an exemption from the core-of-knowledge and internship requirements, which BELTSS denied. She then filed suit against YSU in the Lorain County Court of Common Pleas, alleging that YSU violated the CSPA by representing that it was a BELTSS-approved program.

{¶7} In response to Ms. Krueck's complaint, YSU filed a motion to dismiss for lack of subject-matter jurisdiction, and failure to state a claim under Civil Rule 12(B)(1) and Rule 12(B)(6), respectively. In its combined motion, YSU argued that the Court of Claims had exclusive and original jurisdiction to hear claims for monetary damages brought against the state of Ohio and its instrumentalities, and that Ms. Krueck's CSPA claim otherwise failed because YSU is not a "[s]upplier" under the CSPA. *See* R.C. 1345.01(C). YSU further argued that its materials contained no deceptive or fraudulent statements.

{¶8} The trial court granted YSU's motion, holding that it lacked subject-matter jurisdiction over Ms. Krueck's CSPA claim. In doing so, it agreed with YSU that, as a public university of higher learning, YSU is an instrumentality of the state and, therefore, must be sued for money damages in the Court of Claims. It noted, however, that the Court of Claims lacks jurisdiction over CSPA claims, which seemingly insulates public universities from those claims. The trial court then clarified that, if a public university is acting as a "market-participant[,]" and, therefore, a "supplier" within the meaning of the CSPA, then it could be sued for CSPA violations in the Court of Common Pleas. It concluded that YSU was not acting as a supplier for purposes of the market-participant doctrine and, accordingly, that it lacked subject-matter jurisdiction over Ms. Krueck's CSPA claim.

{¶9} The trial court further concluded that – even if YSU was acting as a supplier – Ms. Krueck's CSPA claim failed because YSU's materials regarding its LTCA program contained no deceptive or fraudulent statements, and because the materials referenced a 1,000-hour internship, thereby providing notice to Ms. Krueck that completing YSU's program alone would not render her eligible to sit for the licensing exams.

{¶10} Ms. Krueck appeals from that decision, raising three assignments of error for our review. We have combined Ms. Krueck's first and second assignments of error to facilitate our review.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN ITS LEGAL CONCLUSION THAT THE COURT OF COMMON PLEAS LACKED JURISDICTION[.]

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN CONCLUDING THAT [YSU] IS NOT A SUPPLIER AND THAT ITS COURSE OF STUDY IS NOT A CONSUMER TRANSACTION[.]

{¶11} In her first assignment of error, Ms. Krueck argues that the trial court erred by granting YSU's motion to dismiss for lack of subject-matter jurisdiction. Relatedly, in her second assignment of error, Ms. Krueck argues that the trial court erred by concluding that the CSPA did not apply.

{¶12} "We review a motion to dismiss pursuant to Civ.R. 12(B)(1) * * * de novo, applying the same standard as the trial court but without deference to the trial court's determination." *Salim v. Smith*, 9th Dist. Lorain No. 15CA010790, 2016-Ohio-2764, ¶ 8. As previously noted, YSU filed its motion to dismiss for lack of subject-matter jurisdiction under Civil Rule 12(B)(1) on the basis that the Court of Claims, not the Court of Common Pleas, had

jurisdiction over Ms. Krueck's CSPA claim. On appeal, Ms. Krueck argues that, since the CSPA predates the establishment of the Court of Claims Act, she properly filed her suit in the Court of Common Pleas. YSU's merit brief defers to the trial court's ruling on this issue, providing no additional argument.

{¶13} The CSPA was enacted in 1972 and prohibits suppliers from committing unfair, deceptive, or unconscionable acts or practices in connection with consumer transactions. R.C. 1345.02 and R.C. 1345.03. A "[p]erson" under the CSPA includes the government and its subdivisions or agencies. R.C. 1345.01(B). Courts, therefore, have acknowledged that the state and its political subdivisions are liable for CSPA violations in certain situations. *See, e.g.*, *Drexel v. Columbus Technical Inst.*, 10th Dist. Franklin No. 88AP-271, 1990 WL 2925, *3-4 (Jan. 18, 1990); Martinez, *Ohio Consumer Law*, Section 2:19, at fn. 1 (2018-2019) (collecting cases); *contra Taylor v. Herring*, 7th Dist. Columbiana No. 12 CO 49, 2014-Ohio-5638, ¶ 13 (interpreting the tort-immunity statute and holding that "a political subdivision is immune from liability in a civil action alleging a violation of the [CSPA.]"). Relevantly, the CSPA vests jurisdiction over such claims with the "courts of common pleas, and municipal or county courts within their respective monetary jurisdiction[.]" R.C. 1345.04.

{¶14} Three years after the CSPA's enactment, the Court of Claims Act "established the Court of Claims, vesting it with 'exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in section 2743.02 of the Revised Code.'" *Santos v. Ohio Bur. of Workers' Comp.*, 101 Ohio St.3d 74, 2004-Ohio-28, ¶ 9, quoting R.C. 2743.03(A)(1). "Under the [Court of Claims] Act, a state university is considered to be an instrumentality of the state, thus amenable to suit." *Collins v. Univ. of Cincinnati*, 3 Ohio App.3d 183, 184 (1st Dist.1981). But, as Section 2743.02(A)(1) provides, "[t]o the extent that

the state has previously consented to be sued, [the Court of Claims Act] has no applicability." "Thus, any type of action against the state which the courts entertained prior to the [Court of Claims] Act may still be maintained outside the Court of Claims." *Racing Guild of Ohio, Local 304, Serv. Emps. Internatl. Union, AFL-CIO, CLC v. Ohio State Racing Comm.*, 28 Ohio St.3d 317, 319 (1986). Accordingly, to the extent that the CSPA applies to actions against the state, the Court of Common Pleas retains jurisdiction to consider those claims. *See Owens College Nursing Students v. Owens State Community College*, 6th Dist. Wood No. WD-14-012, 2014-Ohio-5210, ¶ 6 (acknowledging that the Court of Common Pleas, not the Court of Claims, had jurisdiction over the plaintiffs' CSPA claims).

{¶15} Here, the trial court determined that the CSPA did not apply because YSU was not acting as a "market participant" and, therefore, was not a "supplier" within the meaning of the CSPA. In doing so, it relied upon Tenth District's decision in *Bungard v. Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 07AP-447, 2007-Ohio-6280. *Bungard*, however, addressed the limited issue of whether the Ohio Department of Job and Family Services is a "supplier" within the meaning of the CSPA. *Id.* at ¶ 11. The *Bungard* court stated that the "State of Ohio (or one of its agencies) cannot be a 'supplier' within the meaning of the CSPA unless the State has become a market participant." *Id.* at ¶ 15. It then analyzed the market-participant doctrine, and concluded that "Ohio is not a market-participant in child support matters." *Id.* at ¶ 15.

{¶16} Courts have "recognize[ed] that the [CSPA] is applicable to relationships between a student and a regulated professional school because the school is a 'supplier' of services to a student 'consumer' in a 'consumer transaction' as those terms are defined by R.C. 1345.01." *Trutschel v. Kettering Med. Ctr.*, 2d Dist. Montgomery No. 22816, 2009-Ohio-3302, ¶ 29, citing

*Malone v. Academy of Court Reporting*, 64 Ohio App.3d 588, 594 (10th Dist.1990); *see also Matulin v. Academy of Court Reporting*, 9th Dist. Summit No. 14947, 1992 WL 74210, *5 (Apr. 8, 1992) ("Transactions between [a proprietary school] and its students are consumer transactions under R.C. 1345.01."); *Ajibola v. Ohio Med. Career College, Ltd.*, 2d Dist. Montgomery No. 27975, 2018-Ohio-4449, ¶ 37 ("It is undisputed for purposes of this appeal that the College is a 'supplier,' that [the students] are 'consumer[s],' and that their contract for educational services was a 'consumer transaction' within the meaning of the [CSPA]."). Given the issue before the court in *Bungard*, as well as the more analogous case law cited above, we disagree with the trial court's conclusion that the CSPA was inapplicable. Accordingly, we hold that the trial court had jurisdiction over Ms. Krueck's CSPA claim and, therefore, sustain her first and second assignments of error.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN FINDING THAT YSU'S REPRESENTATIONS ABOUT ITS PROGRAM WERE NOT DECEPTIVE OR MISLEADING[.]

{¶17} In her third assignment of error, Ms. Krueck argues that the trial court erred by concluding that YSU's representations about its LTCA program were not deceptive or misleading.[1] Her argument in this regard relates to YSU's motion to dismiss under Civil Rule 12(B)(6). Rule 12(B)(6) provides that a party may move to dismiss a claim where the complaint fails to state a claim upon which relief can be granted. "To prevail on a Civ.R. 12(B)(6) motion to dismiss, it must appear on the face of the complaint that the plaintiff cannot prove any set of

---

[1] We note that Ms. Krueck's complaint also alleged a violation of Section 1345.03, which governs unconscionable consumer sales practices. Her argument on appeal, however, relates solely to Section 1345.02, which governs unfair or deceptive practices. We will limit our review accordingly.

facts that would entitle h[er] to recover." *Raub v. Garwood*, 9th Dist. Summit No. 22210, 2005-Ohio-1279, ¶ 4. This Court reviews the trial court's grant of a Rule 12(B)(6) motion de novo, "applying the same standard as the trial court but without deference to the trial court's determination." *Salim*, 2016-Ohio-2764, at ¶ 8. In doing so, "[f]actual allegations contained in the complaint are presumed true and all reasonable inferences are drawn in favor of the nonmoving party." *Field v. Summit Cty. CSEA*, 9th Dist. Summit No. 27817, 2016-Ohio-7026, ¶ 7.

{¶18} "The CSPA is remedial in nature, and is to be liberally construed in favor of the consumer." *Dennie v. Hurst Const., Inc.*, 9th Dist. Lorain No. 06CA009055, 2008-Ohio-6350, ¶ 8. "In general, the CSPA defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving * * *." *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, ¶ 24. The determination of whether a sales practice is deceptive is based upon a reasonableness standard. *Struna v. Convenient Food Mart*, 160 Ohio App.3d 655, 2005-Ohio-1861, ¶ 15 (8th Dist.) ("[C]ourts shall apply a reasonableness standard in determining whether an act amounts to deceptive, unconscionable, or unfair conduct.").

{¶19} Here, as set forth above, Ms. Krueck alleged that statements contained in YSU's materials pertaining to its LTCA program caused her to believe that its program was BELTSS approved, meaning that she could sit for the state and national licensing exams without having to complete the core-of-knowledge course or 1,500-hour internship. This included statements from one document indicating that "[g]raduates of the LTCA program are *eligible* to sit for the national and state licensure exams." (Emphasis added.) Another document contained statements that:

Licensed graduates of the long term care administration program at [YSU] are eligible to become assistant administrators * * *.

* * *

The primary focus of the long term care administration program at [YSU] is to prepare students to become * * * licensed administrators in nursing and convalescent homes, retirement communities and related healthcare industries.

Graduates receive a Bachelor of Science in Applied Science in long term care administration and are *eligible* to sit for the national and State of Ohio licensing examinations.

(Emphasis added.)  The trial court considered each statement, determining that "the common theme in the statements advanced by YSU is that graduates of the [LTCA program] 'are eligible' to sit for the exam."  Being eligible to take an exam, it determined, was not synonymous with being guaranteed to take an exam; rather, it was akin to being "qualified," which does not presuppose that nothing further is required.  The trial court also noted that the materials made no mention of BELTSS, or its approval of the program.  In what Ms. Krueck asserts is a mistaken understanding of YSU's program, the trial court further noted that the materials do reference a 1,000-hour internship, thereby putting Ms. Krueck on notice of further requirements.  Ms. Krueck asserts that the 1,000-hour internship referenced in YSU's materials (and relied upon by the trial court) is one that she completed, and is wholly separate from the 1,500-hour internship required for students who do not complete a BELTSS-approved program.  Notwithstanding, the trial court determined that no reasonable person reading the above-quoted statements would conclude that, upon graduation, a student would be immediately eligible to sit for the licensing exams without completing the "1,000-hour internship and additional coursework."  At this stage of the proceedings, this Court disagrees.

{¶20}  Presuming all of the factual allegations in the complaint are true, and drawing all reasonable inferences in favor of Ms. Krueck, we cannot say that it was unreasonable for Ms.

Krueck to interpret YSU's materials as meaning that completion of its program would allow her to sit for the licensing exams without further coursework or an additional internship. As the Tenth District has stated:

> It is not unreasonable for one matriculating to an institution of higher learning, which offers course materials and degrees in a certain professional field, to assume that the credits for courses taken at such institution, and any degree thereafter that might be granted, would qualify the student or the graduate for the appropriate state professional examination.

*Behrend v. State*, 55 Ohio App.2d 135, 140 (10th Dist.1977). While the trial court's interpretation of the word "eligible" under these facts may be reasonable, we cannot say that – as a matter of law and for purposes of deciding a Rule 12(B)(6) motion – Ms. Krueck's interpretation was unreasonable, warranting dismissal of her claim at this early stage of the proceedings. In fact, as discussed above, the trial court itself was seemingly misled by the information contained in YSU's materials insofar that it confused the 1,000-hour internship that – according to Ms. Krueck – was part of YSU's curriculum (that she completed) with the 1,500-hour internship required for students who do not complete a BELTSS-approved program. Regardless, applying the standard for ruling on a motion under Rule 12(B)(6), we cannot say that Ms. Krueck's complaint fails to state a claim upon which relief can be granted. *See Ajibola*, 2018-Ohio-4449, at ¶ 36-38 (reversing the trial court's grant of a nursing school's Rule 12(B)(6) motion to dismiss the former students' CSPA claim). Accordingly, we reverse the decision of the trial court, and remand the matter for further proceedings.

III.

{¶21} Ms. Krueck's assignments of error are sustained. The judgment of the Lorain County Court of Common Pleas is reversed, and the matter is remanded for further proceedings.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JENNIFER HENSAL
FOR THE COURT

TEODOSIO, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

EMILY WHITE and MARC E. DANN, Attorneys at Law, for Appellant.

JEFFREY C. MILLER and VICTORIA L. FERRISE, Attorneys at Law, for Appellee.